### THE UNITED STATES DISTRICT COURT
### DISTRICT OF SOUTH CAROLINA
### CHARLESTON DIVISION

Stipkala & Klosowski LLC d.b.a. Thrive IP®,

                     Plaintiff,                        Civil Action No.:  2:20-cv-2456-RMG

                v.

Thrive Law, PA, f.k.a. Uncommon Legal PA,

                and

Jamie Moore Marcario,

                     Defendants.

_____

## COMPLAINT

Plaintiff Stipkala & Klosowski LLC d.b.a. Thrive IP® ("Plaintiff"), by and through its attorneys, Thrive IP®, for its Complaint against Defendant Thrive Law, PA, f.k.a. Uncommon Legal PA, ("Thrive Law, PA") and Defendant Jamie Moore Marcario ("Marcario")(collectively "Defendants"), alleges, on knowledge as to its own actions, and otherwise upon information and belief, as follows:

### PRELIMINARY STATEMENT

1.     This is an action for infringement of Plaintiff's federally-registered service mark THRIVE IP® under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), for unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and for substantial and related claims of violation of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10 *et seq.*, under the statutory and common laws of the State of South Carolina, all arising from the Defendant's unauthorized use of the mark THRIVE LAW in connection with the marketing, advertising, promotion, offering for sale, and/or sale of Defendants' legal services.

2.      Plaintiff seeks injunctive and monetary relief.

## JURISDICTION

3.      This court has jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332(a), 1338(a) and (b).  This Court further has jurisdiction over this action pursuant to 28 U.S.C. § 1367 under principles of supplemental jurisdiction.

4.      Defendants' purposefully directed activities in interstate commerce, including South Carolina, as more specifically alleged below, confer this Court with personal jurisdiction over Defendants pursuant to S.C. Code Ann. § 36-2-803.

## VENUE

5.      Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district, and/or 28 U.S.C. § 1391(b)(2), in that a substantial part of property that is the subject of the action is situated in this district.

## PARTIES

6.      Plaintiff Stipkala & Klosowski LLC is a limited liability company formed under the laws of South Carolina with a place of business in North Charleston, SC.  Plaintiff has three members: Jeremy M. Stipkala is a citizen of South Carolina; Bernard S. Klosowski, Jr. is a citizen of South Carolina; and Peter L. Brewer is a citizen of Tennessee.  Founded in 2005 as Stipkala LLC, Plaintiff provides intellectual property and related legal services throughout the United States.

7.    Upon information and belief, Defendant Thrive Law, PA is a corporation that is incorporated in Florida and has its principal place of business in St. Petersburg, Florida.  Upon information and belief, Defendant Thrive Law, PA was founded in 2016 and offers legal services in the fields of business, employment, litigation, and intellectual property law throughout the United States.

8.    Upon information and belief, Defendant Jamie Moore Marcario is an individual who resides in or near St. Petersburg, Florida.  Upon information and belief, Defendant Marcario is a citizen of Florida.  Upon information and belief, Defendant Marcario is a member of the Florida Bar with a primary occupation of attorney.  Upon information and belief, Defendant Marcario offers legal services in the field of business, employment, litigation, and intellectual property law.  Upon information and belief, Defendant Marcario is the sole owner of Defendant Thrive Law, PA.

**FACTS**

A.    Plaintiff and its THRIVE IP® Mark

9.    Plaintiff is a law firm specializing in intellectual property and related legal services.  Such services include not only patent law and trademark law, but also litigation, contract law, trade secret law, and copyright law.

10.    Plaintiff is the owner of valid and subsisting United States Service Mark Registration No. 4,370,066 on the Principal Register in the United States Patent and Trademark Office for the service mark THRIVE IP® (hereinafter "the THRIVE IP® Mark") for "legal services, namely, providing intellectual property legal services" in International Class 045, which has become incontestable within the meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065.  Attached as Exhibit 1 is a true and correct copy of the registration certificate and

3

maintenance records for Plaintiff's Registration No. 4,370,066, which was issued by the U.S. Patent and Trademark Office on July 16, 2013.

11.     Plaintiff has used the THRIVE IP® Mark in commerce throughout the United States continuously since March 4, 2013 in connection with the provision, offering for sale, sale, marketing, advertising, and promotion of intellectual property and related legal services. Attached hereto as Exhibit 2 are copies of representative samples of Plaintiff's website at https://thrive-ip.com showing Plaintiff's use of the THRIVE IP® Mark in connection with its intellectual property and related legal services.

12.     As a result of its widespread, continuous, and exclusive use of the THRIVE IP® Mark to identify its intellectual property and related legal services, Plaintiff owns valid and subsisting federal statutory and common law rights to the THRIVE IP® Mark.  In addition, Plaintiff owns common law state rights in and to the THRIVE IP® Mark in the various states where it provides intellectual property and other legal services, including but not limited to, Maryland, South Carolina, Tennessee, Texas, Virginia, and Washington, DC.

13.     Plaintiff's THRIVE IP® Mark is distinctive to both the consuming public and Plaintiff's trade.

14.     Plaintiff has expended substantial time, money, and resources marketing, advertising, and promoting the intellectual property and related legal services marketed under the THRIVE IP® Mark including through its website at Thrive-IP.com; affiliated websites CarolinaPatentAttorney.com, and Energy-IP.com; press releases; in-person lectures on various legal topics; webinars; trade mission participation; pitch contest judging; conference sponsorship; LinkedIn pages; trade organization membership and leadership; and conference

attendance. During the years 2018-2019 alone, Plaintiff has expended in excess of seventy-five thousand US Dollars ($75,000.00) on the marketing, advertising, and in-person promotion of the intellectual property and related legal services sold under the THRIVE IP® Mark.

15.    For example, in the past five years, Plaintiff's attorneys personally appeared and gave lectures on intellectual property legal topics in Illinois, Oklahoma, South Carolina, Tennessee, Texas, Israel, and Austria, and by webinar sponsored by the Association of Intellectual Property Firms and the American Law Institute. The THRIVE IP® mark was prominently displayed in various media at those lectures.

16.    Plaintiff's attorneys actively serve as board members of the Association of Intellectual Property Firms, the Carolina Patent, Trademark, and Copyright Law Association, and the Tennessee Intellectual Property Law Association, routinely provide guest lectures to universities and business development organizations, and mentorship to new attorneys.

17.    Plaintiff's attorneys have published four books since 2018 on succeeding in law school and passing bar examinations. Available on Amazon.com and various platforms, the books have been purchased around the world.

18.    In 2019, Plaintiff's gross revenues under the THRIVE IP® Mark exceeded one million dollars.

19.    Plaintiff provides intellectual property and related legal services under the THRIVE IP® Mark to individuals, start-up and established businesses, government agencies, universities, other law firms, and FORTUNE 500® businesses across the United States and around the world.

20.     Plaintiff provides intellectual property and related legal services under the THRIVE IP® Mark to clients in Florida, including a nutraceutical client in Miami, and a composites manufacturer in Sarasota.

21.     Plaintiff has provided intellectual property and related legal services under the THRIVE IP® Mark to clients in U.S. district courts, before various state government agencies such as departments of state that register trademarks under state law and departments of corporations that register companies, before the National Arbitration Forum (arbiter of Uniform Domain Name Dispute Resolution Policy set by the Internet Corporation for Assigned Names and Numbers (ICANN)), before the United States Patent and Trademark Office, and before the International Bureau of the World Intellectual Property Organization.

22.     The intellectual property and related legal services Plaintiff offers under the THRIVE IP® Mark are of high quality.  Plaintiff has been awarded "Best Law Firm" in 2018 and 2019.  Thrive IP® Attorney Peter L. Brewer has been named a MidSouth SuperLawyer® for 2019 and 2020.

23.     As a result of Plaintiff's expenditures and efforts, the THRIVE IP® Mark has come to signify in the public's mind a high quality of intellectual property and related legal services, and has acquired incalculable distinction, reputation, and goodwill belonging exclusively to Plaintiff.

24.     Plaintiff's THRIVE IP® Mark and the intellectual property and related legal services offered thereunder have received significant unsolicited coverage in various media, including an interview on National Public Radio (2017) and a quotation in the Journal of Petroleum Technology (2018), which is distributed internationally in print and electronic format.

B.     Defendant's Unlawful Activities

25.     Upon information and belief, Defendants are engaged in providing legal services in the fields of business, employment, litigation, and intellectual property law.

26.     Without Plaintiff's authorization, and upon information and belief, beginning after Plaintiff acquired protectable exclusive rights in its THRIVE IP® Mark, Defendants adopted and began using THRIVE LAW (hereinafter, the "Infringing Mark") in interstate commerce in the United States.

27.     The Infringing Mark adopted and used by Defendant is confusingly similar to Plaintiff's THRIVE IP® Mark.  Both marks start with and share "Thrive" as the first word. Plaintiff has disclaimed "IP" in the THRIVE IP® mark, and Defendants have disclaimed "law" in the infringing mark in their respective applications for service mark registration.  For those reasons, "thrive" is the "dominant" portion of the two marks, and is viewed under trademark law as an "arbitrary" term that is worthy of a higher degree of exclusivity and protection.  *See also* Ex. 5 at p. 3, Ex. 7 at p. 4, Ex. 8 at p. 3, and Ex. 11 at p. 3 (United States Patent and Trademark Office finding "Thrive" is dominant.).

28.     Upon information and belief, Defendant has been engaged in the provision, advertising, promotion, offering for sale, and sale of business, employment, and intellectual property legal services using the Infringing Mark throughout the United States.  Attached hereto as Exhibit 3 are true and correct screenshot copies of representative webpages found at https://www.thrivelaw.com showing Defendant's use of the Infringing Mark.  The last page shows an image from a post to INSTAGRAM by Defendants under the username @thrivelaw.

7

29.    Upon information and belief, the business, employment, and intellectual property legal services Defendants have provided, marketed, advertised, promoted, offered for sale, and sold under the Infringing Mark include filing federal trademark registration applications for clients in California, Florida, and Texas.

30.    Upon information and belief, Defendant has provided business, employment, and intellectual property legal services to clients in U.S. district courts, before various state government agencies such as departments of state that register trademarks and service marks under state law, and before the United States Patent and Trademark Office, that is, many of the same fora where Plaintiff provides its intellectual property and related legal services.

31.    Upon information and belief, Defendants have marketed, advertised, and promoted their legal services under the Infringing Mark through a website at https://www.thrivelaw.com, a Thrive Law page on FACEBOOK, a TWITTER account with the username @thrivelaw, a LINKEDIN account in the name of Defendant Marcario, an INSTAGRAM account with the username @thrivelaw, and postings of videos on YOUTUBE.

32.    Upon information and belief, Defendants offer and sell their legal services under the Infringing Mark to individuals, start-up businesses, and mid-size business, that is, many of the same types of clients that Plaintiff serves.

33.    Upon information and belief, Defendant Marcario has advertised her legal services under the Infringing Mark independent of any corporate identity.  Defendant Marcario has also filed at least one application for federal trademark registration for "THRIVE LAW" in the name of a business entity that did not at that time exist.

34.     Defendant Marcario has admitted interstate commercial use of the Infringing Mark to the United States Patent and Trademark Office ("USPTO") with the following digital image:



35.     Defendant Marcario alleged that interstate commercial use of the Infringing Mark commenced on October 23, 2017.  *See* U.S. Service Mark Application No. 87/646,062 ("the '062 application")(attached as Exhibit 4).

36.     Defendant Marcario filed the '062 application for THRIVE LAW on October 15, 2017 in the name of Uncommon Legal PA (later renamed as Defendant Thrive Law, PA).  The services covered by the mark are "legal services, namely, in the field of business and

employment law" in International Class 045.  *See* Ex. 4 at p. 2.  The '062 application alleges a first use anywhere as of September 2, 2017, and a first use in interstate commerce on October 23, 2017.  Based on these alleged dates, Defendant Marcario is the "junior user" relative to Plaintiff of the word "Thrive" in the United States in connection with the provision of legal services.

37.     The '062 application includes the disclaimer, "No claim is made to the exclusive right to use 'LAW' apart from the mark as shown."

38.     The USPTO rejected the '062 application, *inter alia*, for a likelihood of confusion over Plaintiff's mark, THRIVE IP®, having U.S. Service Mark Reg. No. 4,370,066.  *See* Office Action dated Jan. 24, 2018 (attached as Exhibit 5).

39.     Accordingly, Defendants had actual notice of Plaintiff's registered mark, THRIVE IP®, at least as early as about January 24, 2018.

40.     Defendants had actual notice of the likelihood of confusion between Defendants' infringing THRIVE LAW mark and Plaintiff's THRIVE IP® Mark, at least as early as about January 24, 2018.

41.     Upon information and belief, Defendants expressly abandoned the '062 application on July 5, 2018.  Yet, despite having actual knowledge of Plaintiff's mark, and despite being informed by the USPTO of the likelihood of consumer confusion, Defendants willfully and intentionally continued to use the THRIVE LAW mark in an infringing manner.

42.     Not deterred, Defendant Marcario filed U.S. Service Mark Application No. 87/679,489 ("the '489 application") for the following composite form (word and design) mark:



on November 10, 2017 in the name of Thrive Law, PA (not the Defendant, as explained below). The services covered by the mark are "legal consulting services in the field of business and employment law" in International Class 045. *See* U.S. Service Mark Application No. 87/679,489 (attached as Exhibit 6).

43.    The '489 application includes the disclaimer, "No claim is made to the exclusive right to use 'LAW' and 'A BUSINESS LAW BOUTIQUE' apart from the mark as shown."

44.    The USPTO rejected the '489 application, *inter alia*, for a likelihood of confusion over Plaintiff's mark, THRIVE IP®, having U.S. Service Mark Reg. No. 4,370,066, on February 23, 2018. *See* Office Action dated Feb. 23, 2018 (attached as Exhibit 7 (including only pages 1-9 of 82 original pages)).

45.    Defendant Marcario responded to that rejection on July 27, 2018, arguing, *inter alia*, that Defendants' mark is distinctive, that "Thrive" in the marks is not dominant, and that the presence of numerous marks using "Thrive" in the legal services field render Plaintiff's registered mark weak. Defendant Marcario never contacted Plaintiff to advise of her intended use as would be, at a minimum, a matter of professional courtesy, nor did she request a license in view of the obvious infringement of Plaintiff's THRIVE IP® Mark.

46.    On August 14, 2018, the USPTO made "final" the rejection of the '489 application, *inter alia*, based on the likelihood of confusion with Plaintiff's registered THRIVE IP® Mark.  *See* Office Action dated Aug. 14, 2018 at 3-4 (attached as Exhibit 8 (including only pages 1-5 of original 44 pages)).

47.    Defendants' '489 application became abandoned on April 1, 2019.

48.    On May 29, 2018, Defendant Marcario obtained Florida Service Mark Registration No. T18000000569 for "THRIVELAW & DESIGN OF THE WORD 'THRIVE' IN LOWERCASE DARK GREEN LETTERS; THE LETTER 'I' UPSIDE DOWN, AND THE WORD 'LAW' IN CAPITAL LIME GREEN LETTERS."  *See* Florida Service Mark Registration No. T18000000569 (attached as Exhibit 9).  The mark is alleged to be used with "Legal services, legal services in the field of business, employment, and intellectual property law." *See id.*  The owner is asserted to be Thrive Law, PA.  Marcario alleged first use anywhere, and first use in Florida, to be October 27, 2017.

49.    Defendant Marcario filed U.S. Service Mark Application No. 88/675,209 for THRIVE LAW on October 31, 2019 in the name of Defendant Thrive Law, PA, for "legal services" in International Class 045.  *See* U.S. Service Mark Application No. 88/675,209 ("the '209 application")(attached as Exhibit 10).  The '209 application asserts a first use anywhere as of October 15, 2017, and a first use in interstate commerce on October 15, 2017.

50.    The '209 application was accompanied by the following image showing how the mark is used in interstate commerce:



51.    The USPTO rejected the '209 application, *inter alia*, for a likelihood of confusion over Plaintiff's mark, THRIVE IP®, having U.S. Service Mark Reg. No. 4,370,066, on February 6, 2020.  *See* Office Action dated Feb. 6, 2020 (attached as Exhibit 11).  Upon information and belief, Defendants have not responded to that rejection as of the filing of this Complaint.

52.    Upon information and belief, Uncommon Legal PA was formed in 2016 with FL Div. Corp. Doc. No. P16000012662.

53.    Upon information and belief, Defendant Marcario filed papers to register Thrive Law, PLLC as a limited liability company in Florida on October 30, 2017.  Those papers were assigned FL Div. Corp. Doc. No. L17000224820.

54.    Upon information and belief, a company having the name "Thrive Law, PA" did not exist on November 10, 2017, the date Defendant Marcario filed the '489 application in its name.  Hence, that application was void and possibly fraudulent.

55.    Upon information and belief, Defendant Marcario filed papers to convert Thrive Law, PLLC into Thrive Law, PA, on December 26, 2017.  Those papers received FL Div. Corp. Doc. No. P17000100903 ("the first Thrive Law, PA").

56.    Upon information and belief, Defendant Marcario voluntarily dissolved the first Thrive Law, PA (FL Div. Corp. Doc. No. P17000100903) to rename Uncommon Legal PA (FL Div. Corp. Doc. No. P16000012662) as "Thrive Law, PA" (herein, "Defendant Thrive Law, PA") on or about May 17, 2018.

57.    Upon information and belief, Defendant Marcario refiled papers on May 29, 2018 that yielded Florida Service Mark Registration No. T18000000569 in the name of "Thrive Law, PA," having FL Div. Corp. Doc. No. P17000100903, *i.e.,* the first Thrive Law, PA. *See* Ex. 9 at p. 6 and 9 (showing date stamp of May 29, 2018). Defendant Marcario dissolved that corporation just twelve days before. Hence, that registration is void and possibly fraudulent.

58.    Defendant Marcario represented to the USPTO that the Infringing Mark is owned by Uncommon Legal PA (*see* '062 application, Ex. 4), then "Thrive Law, PA," which did not exist at the filing of the '489 application (*see* Ex. 6), and finally Defendant Thrive Law, PA (*see* '209 application, Ex. 10), renamed from Uncommon Legal PA. On information and belief, such representations are not supported by written assignments of ownership. A search of the USPTO records reveals no such assignments.

59.    Upon information and belief, Defendant Marcario was and is the sole owner of Uncommon Legal PA, Thrive Law PLLC, the first Thrive Law, PA, and Defendant Thrive Law, PA.

60.    Upon information and belief, each of Uncommon Legal PA, Thrive Law PLLC, the first Thrive Law, PA, and Defendant Thrive Law, PA has served as the alter ego of Defendant Marcario. Defendant Marcario has filed applications for service mark registration in

the name of business entities that did not exist, and has shifted ownership of the infringing

THRIVE LAW mark at will and without benefit of recorded trademark assignments.

61.     On May 22, 2020, and days after discovering the infringement, Plaintiff's counsel

sent a cease and desist letter to Defendant objecting to Defendant's use of the Infringing Mark.

Attached hereto as Exhibit 12 is a true and correct copy of Plaintiff's counsel's May 22, 2020

cease and desist letter and attachments to Defendant.

62.     On June 19, 2020, Attorney Michele G. Moss sent a response to Plaintiff's cease

and desist letter on behalf of Defendant Thrive Law, PA.  The letter denied infringement and

substantially repeated the arguments Defendant Marcario made in the '489 application on July

27, 2018.  In addition, the response offered to remove all reference to trademark, copyright, and

trade dress from its website (www.thrivelaw.com) and its social media accounts on TWITTER,

FACEBOOK, and INSTAGRAM.

63.     As of the filing of this Complaint, Defendant Thrive Law, PA's website and

social media accounts contain numerous references to intellectual property legal services.

64.     Defendant Thrive Law, PA's website prominently features legal services for the

resolution of business disputes among co-owners of a business, including in a manner that is

demeaning to the legal profession and harmful to the professional reputation of Plaintiff:



*See* Ex. 3. (From https://www.thrivelaw.com)(accessed June 24, 2020).

65.    Key to resolving any business dispute among departing business co-owners is the question of intellectual property: Who gets to use the trademark(s), domain name(s), website content and other copyright-protected material, customer list(s), know-how, and other intellectual property of the business being dissolved?  Upon information and belief, Defendants' advertisement of business dispute resolution clearly markets intellectual property legal services.

66.    Defendant Thrive Law, PA's website offers a "Concierge Counsel Program" that includes "trademarking," "confidentiality agreements," "website development agreements," and "software licenses and assignments," among other tasks, each of which are intellectual property legal services.  *See* Ex. 3 at p. 3.

67.    Of counsel attorney Mandi Clay, Esq. is advertised on Defendant Thrive Law, PA's website as having "intellectual property" experience.  *See* Ex. 3 at p. 4.

68.    In a blog post entitled, "To Sue or Not to Sue, That Is the Question," Defendant Marcario writes,

> [I]f you fail to protect your trademark when you find out someone is infringing on it, the delay in taking action may cause you to lose your trademark. For that reason alone, you must bring a suit against someone illegally using your trademark. Not only that, but a judgment in your favor shows the offending party that there are consequences for their actions, giving them reason to stop slandering your business and professional reputation[.]

*See* Ex. 3 at p. 13 (https://www.thrivelaw.com/to-sue-or-not-to-sue/)(accessed June 24, 2020).

69.    A GOOGLE internet search for "thrive law firm" from North Charleston, SC, on June 25, 2020, reveals Defendant Thrive Law, PA as the top search results:



70.    Plaintiff's expenditures of over $75,000.00 on the marketing, advertising, and in-person promotion in 2018-2019 have been wasted, as Plaintiff remains invisible to prospective clients performing internet searches using the dominant and distinctive portion of Plaintiff's

THRIVE IP® mark. This invisibility is due to Defendants' aggressive, willful, and multi-platform campaign to advertise their services using the Infringing Mark, THRIVE LAW.

71.     Plaintiff anticipates spending thousands of dollars in corrective advertising and "search engine optimization" to overcome Defendants' aggressive, willful, and multi-platform campaign to squash Plaintiff's visibility to prospective clients performing internet searches using the dominant and distinctive portion of Plaintiff's THRIVE IP® mark.

72.     Defendant's infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Defendant's business, employment, and intellectual property legal services and have and are likely to deceive the relevant consuming public into believing, mistakenly, that Defendant's business, employment, and intellectual property legal services originate from, are associated or affiliated with, or otherwise authorized by Plaintiff.

73.     Evidenced at least by multiple rejections by the USPTO based on a likelihood of confusion with Plaintiff's Registered Mark followed by persistent and prominent use of the rejected Infringing Mark, and upon information and belief, Defendant's acts are willful with the deliberate intent to trade on the goodwill of Plaintiff's THRIVE IP® Mark, cause confusion and deception in the marketplace, and divert potential sales of Plaintiff's intellectual property and related legal services to the Defendant.

74.     Defendant's acts are causing, and unless enjoined, will continue to cause damage and immediate irreparable harm to Plaintiff and to its valuable reputation and goodwill with the consuming public for which Plaintiff has no adequate remedy at law.

## COUNT ONE (Federal Trademark Infringement)

75.    Plaintiff repeats and realleges paragraphs 1 through 74 hereof, as if fully set forth herein, not inconsistent herewith.

76.    Defendants' unauthorized use in commerce of the Infringing Mark as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendant's intellectual property and related legal services, and is likely to cause consumers to believe, contrary to fact, that Defendants' business, employment, and intellectual property legal services are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendants are in some way affiliated with or sponsored by Plaintiff.    Defendants' conduct therefore constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

77.    Upon information and belief, Defendants have committed the foregoing acts of infringement with full knowledge of Plaintiff's prior rights in the THRIVE IP® Mark and with the willful intent to cause confusion and to trade on Plaintiff's goodwill.

78.    Defendants' conduct is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court.  Plaintiff has no adequate remedy at law.

79.    Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT TWO (Federal Unfair Competition)

80.     Plaintiff repeats and realleges paragraphs 1 through 79 hereof, as if fully set forth herein, not inconsistent herewith.

81.     Defendants' unauthorized use in commerce of the Infringing Mark as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' business, employment, and intellectual property legal services, and is likely to cause consumers to believe, contrary to fact, that Defendant's business, employment, and intellectual property legal services are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendant is in some way affiliated with or sponsored by Plaintiff.

82.     Defendant's unauthorized use in commerce of the Infringing Mark as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

83.     Upon information and belief, Defendants' conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiff.

84.     Defendants' conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

85.     Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this Court.  Additional damage may be caused to Plaintiff if this Complaint is reported by legal publications, potentially exposing Plaintiff (and,

incidentally, to Defendants as well) to unwanted negative, but unavoidable, publicity. Trademark law requires Plaintiff to file this Complaint in the present circumstances, or lose trademark rights.  Plaintiff has no adequate remedy at law.

86.    Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT THREE (South Carolina Unfair Trade Practices Act Liability)

87.    Plaintiff repeats and realleges paragraphs 1 through 86 hereof, as if fully set forth herein, not inconsistent herewith.

88.    Defendant's conduct as alleged herein constitutes unfair and deceptive acts in the conduct of trade or commerce.

89.    Defendants' conduct as alleged herein is offensive to public policy and is immoral, unethical, and oppressive, especially in light of four Office Actions from the USPTO informing Defendants of (a) Plaintiff's superior trademark rights and (b) the likelihood of confusion between Plaintiff's THRIVE IP® Mark and the infringing THRIVE LAW mark.

90.    Defendants' conduct as alleged herein is deceptive, as it has a tendency to deceive consumers as to the source of Defendants' business, and intellectual property legal services.

91.    Defendants' conduct as alleged herein constitutes an attorney advertising her services in South Carolina in a false, deceptive, or misleading manner within the meaning of S.C. Code Ann. § 39-5-39 (1985).

92.     Defendant's conduct as alleged herein has affected the public interest, at least because Defendants' conduct is continuous and capable of being repeated.

93.     Defendant's conduct as alleged herein has caused Plaintiff to suffer monetary and property losses as a result of Defendants' unfair and deceptive acts.

94.     A significant portion of the harm caused by Defendants' conduct as alleged herein has directly and indirectly affected the people of South Carolina by injecting confusion into the stream of commerce.

95.     Upon information and belief, Defendants knew or should have known that Defendants' conduct as alleged herein violated S.C. Code Ann. § 39-5-20 at least as of August 14, 2018 – the date of final rejection of the '489 service mark application.

96.     Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, the Court finding that Defendants' conduct as alleged herein was a willful or knowing violation of Section 39-5-20 of the South Carolina Code of Laws, three times actual damages, reasonable attorneys' fees, and such other relief as the Court deems necessary or proper.

**WHEREFORE**, Plaintiff requests judgment and relief against Defendants as follows:

1.     That Defendant has violated Section 32 of the Lanham Act (15 U.S.C. § 1114) and Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

2.     That Defendant has violated the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10 *et seq.* (1985).

3.     That the Court grant an injunction preliminarily and permanently enjoining the Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates,

subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise from:

    a.    providing, selling, marketing, advertising, promoting, or authorizing any third party to provide, sell, market, advertise or promote intellectual property legal services bearing the mark THRIVE LAW or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's THRIVE IP® mark;

    b.    engaging in any activity that infringes Plaintiff's rights in its THRIVE IP® mark;

    c.    engaging in any activity constituting unfair competition with Plaintiff;

    d.    making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that (i) Defendant's business, employment, litigation, and intellectual property legal services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiff or (ii) Plaintiff's intellectual property and related legal services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Defendant;

    e.    using or authorizing any third party to use in connection with any business, goods, or services any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, or trade dress that falsely associate such business, goods and/or services with Plaintiff or tend to do so;

    f.    registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating

the mark THRIVE LAW or any other mark that infringes or is likely to be confused with Plaintiff's THRIVE IP® mark, or any goods or services of Plaintiff, or Plaintiff as their source, whether before the U.S. Patent and Trademark Office or the State of Florida; and

g.     aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) through (f).

4.     That the Court grant such other and further relief as the Court may deem proper to prevent the public and trade from deriving the false impression that any goods or services manufactured, sold, distributed, licensed, marketed, advertised, promoted, or otherwise offered or circulated by Defendant are in any way approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiff or constitute or are connected with Plaintiff's intellectual property and related legal services.

5.     That the Court direct Defendant to immediately cease all manufacture, display, distribution, marketing, advertising, promotion, sale, offer for sale and/or use of any and all packaging, labels, promotional items, advertisements, signs, displays, websites, social media accounts and postings, and other materials that feature or bear any designation or mark incorporating the mark THRIVE LAW or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's THRIVE IP® mark, and to direct all advertisers, trade associations, social media platforms, and other individuals and establishments wherever located in the United States that distribute, advertise, promote, sell, or offer for sale Defendant's services to cease forthwith the display, distribution, marketing, advertising, promotion, sale, and/or offering for sale of any and all goods, services, packaging, labels, promotional items, advertisements, signs, displays, and other materials featuring or bearing the mark THRIVE LAW or any other mark that is a counterfeit, copy, simulation,

confusingly similar variation, or colorable imitation of the Plaintiff's THRIVE IP® mark, and to immediately remove them from public access and view.

6.      That the Court direct Defendants to assign to Plaintiff the domain name www.thrivelaw.com and any other domain name owned or controlled by Defendants consisting of, incorporating, or containing Plaintiff's THRIVE IP® mark or any counterfeit, copy, confusingly similar variation, or colorable imitation thereof.

7.      That the Court direct Defendants to formally abandon with prejudice any and all of its applications to register  and registrations of the mark THRIVE LAW or any mark consisting of, incorporating, or containing Plaintiff's THRIVE IP® mark or any counterfeit, copy, confusingly similar variation, or colorable imitation thereof on any state or federal trademark registry, including, but not limited to, U.S. Service Mark App. No. 88/675,209.

8.      That the Court direct Defendants to cancel with prejudice any and all of its registrations for the mark THRIVE LAW or any mark consisting of, incorporating, or containing Plaintiff's THRIVE IP® mark or any counterfeit, copy, confusingly similar variation, or colorable imitation thereof on any state or federal trademark registry, including, but not limited to, Florida Service Mark Reg. No. T18000000569.

9.      That the Court direct, pursuant to Section 35(a) of the Lanham Act (15 U.S.C. § 1116(a)), Defendants to file with the Court and serve upon Plaintiff's counsel within thirty (30) days after service on Defendants of an injunction in this action, or such extended period as the court may direct, a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied therewith.

10.     That the Court award Plaintiff an amount up to three times the amount of its actual damages, in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)).

11.     That the Court direct Defendant to account to and pay over to Plaintiff all profits realized by its wrongful acts in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)), enhanced as appropriate to compensate Plaintiff for the damages caused thereby.

12.     Declaring that this is an exceptional case pursuant to Section 35(a) of the Lanham Act and awarding Plaintiff its costs and reasonable attorneys' fees thereunder (15 U.S.C. § 1117(a)).

13.     That the Court declare that Defendants have committed a willful or knowing violation of Section 39-5-20 of the South Carolina Unfair Trade Practices Act.

14.     That the Court award three times actual damages to Plaintiff in accordance with the South Carolina Unfair Trade Practices Act (S.C. Code Ann. § 140(a)).

15.     That the Court award reasonable attorneys' fees and costs to Plaintiff in accordance with the South Carolina Unfair Trade Practices Act (S.C. Code Ann. § 140(a)).

16.     That the Court award such other and further relief as the Court deems just and proper.

Dated:    June 29, 2020
          North Charleston, SC

Respectfully submitted,

s/Jeremy M. Stipkala

Jeremy M. Stipkala (Fed. Id. No. 10479)
Thrive IP®
5401 Netherby Lane
Suite 1201
North Charleston, SC 29420
843.580.9057
Jeremy.Stipkala@Thrive-IP.com

*Attorneys for Plaintiff Thrive IP®*